UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| GEORGIA-PACIFIC CONSUMER PRODUCTS LP and GEORGIA-PACIFIC LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. _____ |
| vs. | ) ) | **JURY TRIAL DEMANDED** |
| GREEN SKY NORTHWEST, INC. d.b.a. GREEN SKY CLEANING SUPPLY, | ) ) ) | |
| Serve:  Registered Agent Thomas E. Pulliam 112 South Hanley Road St. Louis, MO 63105-3418 | ) ) ) ) ) | |
| and | ) ) | |
| DOES 1 through 5, | ) ) | |
| Defendants. | ) ) | |

Plaintiffs Georgia-Pacific Consumer Products LP ("GPCP") and Georgia-Pacific LLC ("GP") (sometimes collectively referred to herein as "Georgia-Pacific"), by and through their attorneys, for their Complaint against defendant Green Sky Northwest, Inc. d.b.a. Green Sky Cleaning Supply ("Green Sky") state and allege as follows:

## PARTIES

1.      GPCP is a limited partnership organized under the laws of the State of Delaware, with its principal place of business in Atlanta, Georgia.  The partners of GPCP are citizens of the States of Delaware, Kansas, Virginia, and/or Georgia.  GP is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in Atlanta, Georgia.  The members of GP are citizens of the States of Delaware, Kansas, and/or Georgia.

GPCP and GP are affiliated entities, and unless otherwise indicated, GPCP and GP are collectively referred to hereafter as "Georgia-Pacific."

2.      Upon information and belief, Green Sky is a corporation, is organized under the laws of the State of Missouri, has its principal place of business in Fenton, Missouri, and is a citizen of the State of Missouri.

3.      Defendants DOES 1 through 5 are individuals and/or entities who, upon information and belief, are citizens of States other than Delaware, Virginia, Kansas, and Georgia.

## JURISDICTION AND VENUE

4.      This action arises and is brought under the Lanham Act, 15 U.S.C. § 1051, *et seq.,* and the laws of the State of Missouri.

5.      Subject matter jurisdiction exists under 28 U.S.C. §§ 1331, 1338, and 1367(a).  In addition, jurisdiction exists under 28 U.S.C. § 1332 as there is diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

### *Trademark Ownership, Registration, and Licensing*

7.      GP is the owner of the Georgia-Pacific® mark and the GP Logo mark, which are registered in the United States Patent and Trademark Office, as follows:

| Mark | United States Reg. No. | Goods |
|------|------------------------|-------|
| GEORGIA-PACIFIC | 0994319 | Paper towels and dispensers for paper towels |
| GP Logo  | 0998444 | Paper towels and dispensers for paper towels |

8.      Pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, affidavits were duly filed, and these registrations are incontestable.

9.      GPCP holds an exclusive license from GP to use these marks for the goods identified above.

10.     GPCP is the owner of the mark enMotion® and certain Touchless Design Logo marks, which are registered in the United States Patent and Trademark Office, as follows:

| Mark | United States Reg. No. | Goods |
|------|------------------------|-------|
| ENMOTION | 2664519 | Paper towel dispenser |
| ENMOTION | 2743984 | Paper towel dispenser, non-metal |
| ENMOTION | 2834670 | Paper towels |
| EnMotion (stylized) <br> *enMotion* | 2738343 | Paper towel dispenser |
| Touchless Design Logo  | 2767918 | Paper towel dispenser |
| Touchless Design Logo  | 3037959 | Paper towel dispenser |

*The Leasing of enMotion® Dispensers by GPCP*

11.     GPCP is a leading manufacturer and supplier of paper towels, tissues, napkins, and related products.  GPCP's products are used extensively in the restrooms of hotels, restaurants, schools, stadiums, airports, office buildings, manufacturing facilities, and other away-from-home commercial establishments.  These products include (a) consumables, such as paper towels, tissues, soap, and air freshener gels, and (b) dispensing systems, including dispensers

or other containers for specific consumables.

12.     In December 2006, GPCP became the successor in interest to certain assets of the Georgia-Pacific Corporation through a tax reorganization.  Those assets include, among other things, the assets encompassing the proprietary motion-operated enMotion® paper towel dispensing system (the "Dispensers").

13.     The Dispensers are used in public restrooms throughout the country and are an immensely popular "touchless" alternative to conventional folded towels because they allow a user to obtain a towel without touching the dispenser.

14.     GPCP is the sole manufacturer and exclusive supplier of high quality enMotion® towels designed specifically for the Dispensers and manufactured pursuant to rigorous specifications.

15.     GPCP's current practice is to maintain ownership of the enMotion® Dispensers and to lease them to authorized third-party distributors ("Distributors") through lease agreements ("Dispenser Lease Agreements").  Pursuant to these Dispenser Lease Agreements, the Distributors often pay GPCP a one-time lease fee for each enMotion® Dispenser.  A copy of a standard Dispenser Lease Agreement is attached hereto as *Exhibit 1.*

16.     Distributors then sublease the Dispensers to their end-user customers ("End-User Customers"), *e.g.*, the operators of hotels, restaurants, office buildings, and other commercial facilities.  The End-User Customers agree to abide by the terms of the Sublease Agreement ("Customer Sublease Agreement").  The standard Customer Sublease Agreement entered into by End-User Customers is included as "Exhibit B" to the standard Dispenser Lease Agreement, attached hereto as *Exhibit 1.*

17.     GPCP is a party to each Dispenser Lease Agreement and is an intended and express

third-party beneficiary of the Customer Sublease Agreement, which agreements together define the rights and obligations among GPCP, the Distributors, and the End-User Customers.

18.     Each Dispenser Lease Agreement and Customer Sublease Agreement is printed on stationary bearing the GP Logo mark.  The Dispenser Lease Agreement expressly states that "[a]ll Dispensers leased under this Lease remain [GPCP's] property."  Likewise, the Customer Sublease Agreement expressly states that GPCP "owns the Dispensers and leases them to Distributor" and "[y]ou do not own or have, and will not claim any, ownership rights in the Dispensers."

19.     The Customer Sublease expressly states that the End-User Customer is "authorized to use the Dispensers only as permitted in this Sublease" and "may not sublease, sell, transport, transfer or otherwise dispose of the Dispensers without [GPCP's] written consent." Each Customer Sublease Agreement also expressly prohibits the use of third-party paper towels (paper towels not manufactured by GPCP and sold under the enMotion® brand) in the Dispensers, and grants other specific rights to GPCP, including the right to enter the premises of an End-User Customer in order to remove a Dispenser that is being used in a manner that violates the terms of the Dispenser Lease Agreement or the Customer Sublease Agreement.

20.     The Dispenser Lease Agreements and Customer Sublease Agreements expressly provide that only the high-quality enMotion® towels manufactured, marketed, distributed, and sold by GPCP shall be used in Dispensers.  The Dispenser Lease Agreements and Customer Sublease Agreements impose other conditions intended to ensure the proper functioning of the Dispensers and the quality of the towels dispensed by them.

21.     A copy of the terms of use as set forth in the Customer Sublease Agreement is included inside the carton in which every enMotion® dispenser is shipped.

22.     In addition, the inside of each Dispenser contains a "Notice" that expressly states that the Dispensers are owned by GPCP and designed for use exclusively with enMotion® towels.  The Notice states:

> This dispenser is subject to restrictions on sale, modification, filling and use, and may be used only to dispense the trademark-bearing products identified on its exterior.  [GPCP] strictly prohibits unauthorized sale, modification, filling or use of this dispenser, and will enforce its rights under United States or foreign laws.
>
> This dispenser is the property of [GPCP], Atlanta, Georgia.

23.     Through the Notices, the Dispenser Lease Agreements, and the Customer Sublease Agreements, industry distributors, operators of restroom facilities, and other manufacturers of dispensers and towels are aware that GPCP maintains title to, and ownership of, its Dispensers, and that only enMotion® towels may be used in the Dispensers.

24.     On information and belief, Green Sky had knowledge of GPCP's Dispenser Lease Agreements with its Distributors and its Customer Sublease Agreements with the Distributor's End-User Customers.

25.     Despite this knowledge, Green Sky intentionally interfered with these contractual relationships by purchasing and reselling Dispensers in violation of these contractual relationships and by selling non-genuine paper towels for use in enMotion® dispenses.

***Green Sky's Misrepresenting Itself to the Public as an Authorized Georgia-Pacific Dealer***

26.     Green Sky is not an authorized distributor or reseller of Georgia-Pacific branded towels.

27.     Green Sky operates an internet-based store that sells products at http://www.greenskyclean.com, among other locations.  Green Sky markets for sale and sells Georgia-Pacific-branded products on its website.

28.     Although Green Sky is not an authorized dealer, it holds itself out to the public as

6

an authorized Georgia-Pacific dealer or retailer.

29.      For example, Green Sky uses Georgia-Pacific's trademarks and logos on its website in a manner that is likely to confuse the consuming public into believing that Green Sky has an affiliation, sponsorship, connection, or association with Georgia-Pacific.

30.      This unauthorized use of Georgia-Pacific's trademarks and logos is likely to confuse consumers into believing that Green Sky is an authorized distributor of Dispensers and enMotion® towels, or is somehow associated, affiliated with, or sponsored by Georgia-Pacific.

### *Green Sky's Willful Disregard of Georgia-Pacific's Rights*

31.      Green Sky has been marketing, selling, and distributing enMotion® Dispensers, enMotion® towels, and non-enMotion® towels for use in enMotion® Dispensers without authorization, in violation of Georgia-Pacific's rights.

32.      On January 28, 2010, Georgia-Pacific sent Green Sky a cease-and-desist letter placing it on formal notice that its marketing, selling, and distributing of the Dispensers and enMotion® towels constituted unauthorized and infringing use of Georgia-Pacific's rights. In addition, Georgia-Pacific requested that Green Sky provide Georgia-Pacific with the name of the party(ies) from whom it has obtained any Dispensers or enMotion® towels.  A copy of the January 28, 2010 letter is attached hereto as *Exhibit 2*.  Green Sky ignored this letter.

33.      On February 9, 2010, Georgia-Pacific sent Green Sky another cease-and-desist letter and again requested a response from Green Sky.  A copy of the February 9, 2010 letter is attached hereto as *Exhibit 3*.  Green Sky ignored this letter, as well.

34.      Despite the foregoing, Green Sky continued to interfere with Georgia-Pacific's contracts, continued to hold itself out as an authorized Georgia-Pacific dealer, and otherwise continued to unfairly compete.

7

35.     Green Sky also continues to use Georgia-Pacific's trademarks and logos on its website, giving the false impression that Green Sky is an authorized Georgia-Pacific distributor.

36.     Green Sky's marketing, selling, and distributing of the Dispensers and enMotion® towels is causing and will continue to cause irreparable harm to Georgia-Pacific. These acts have interfered with, and will continue to interfere with, Georgia-Pacific's relationship with existing or potential Distributors and End-User Customers.  These acts are also likely to confuse consumers and misrepresent Green Sky's affiliation, association, or relationship with Georgia-Pacific.

## FIRST CLAIM FOR RELIEF

### (Violation of Lanham Act, 15 U.S.C. § 1114)

37.     Georgia-Pacific incorporates by reference the allegations in the prior paragraphs as if set forth here.

38.     By engaging in the acts described above, Green Sky has introduced and marketed products in interstate commerce using designations and representations that are confusingly similar to Georgia-Pacific's registered trademarks.

39.     Green Sky's actions are likely to cause confusion, to cause mistake, and to deceive purchasers, prospective purchasers, and the public.

40.     Green Sky's actions demonstrate an intentional, willful and malicious intent to trade upon the goodwill associated with Georgia-Pacific's registered trademarks.

41.     Green Sky's actions constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

42.     Georgia-Pacific is being and will continue to be damaged by Green Sky's infringing activities, which cause a likelihood of confusion and actual confusion among the

purchasing public as to the true identity, source, sponsorship or affiliation of the goods of Green Sky.

43.     Because of Green Sky's infringing activities, Georgia-Pacific has suffered and will continue to suffer damage to its business reputation and goodwill, and the loss of sales and profits it would have made but for the improper acts of Green Sky.

44.     Green Sky's infringing activities have caused, and continue to cause, irreparable injury to the value and goodwill of Georgia-Pacific's trademarks, as well as irreparable injury to its business, goodwill, and reputation.  Georgia-Pacific thus has no adequate remedy at law.

45.     Georgia-Pacific is entitled to temporary, preliminary, and permanent injunctive relief and an award of Green Sky's profits, an accounting of such profits, actual damages, treble damages, attorney fees, costs, and interest.

## SECOND CLAIM FOR RELIEF

### (Violation of Lanham Act, 15 U.S.C. § 1125(a)(1)(A))

46.     Georgia-Pacific incorporates by reference the allegations in the prior paragraphs as if set forth here.

47.     Without authorization, Green Sky has been marketing, selling, and distributing enMotion® dispensing systems in violation of Georgia-Pacific's ownership rights.

48.     By its marketing, selling, and distributing of Dispensers (and enMotion® towels for use in the Dispensers), Green Sky is likely to cause confusion, or mistake, or to deceive customers as to an affiliation, sponsorship, connection, or association of Green Sky with Georgia-Pacific, or as to the affiliation, sponsorship, or approval of the products sold by Green Sky under the Georgia-Pacific and enMotion® brands, all in violation of 15 U.S.C. § 1125(a)(1)(A).

49.     Green Sky's marketing, selling, and distributing of Dispensers also deprive Georgia-Pacific of control over the product quality that it has agreed to maintain though its Dispenser Lease Agreements and Customer Sublease Agreements.  For example, those agreements expressly provide that only the enMotion® towels manufactured, marketed, distributed, or sold by Georgia-Pacific shall be used in Dispensers.  The agreements also impose other conditions intended to ensure the proper functioning of the Dispensers and the quality of the products dispensed by them.

50.     Green Sky's marketing, selling, and distributing of Dispensers also void and deprive purchasers of the parts and workmanship warranty Georgia-Pacific provides on the Dispensers.

51.     These acts, practices and conduct of Green Sky constitute unfair competition, false designation of origin, and false description or representation, within the meaning of 15 U.S.C. § 1125(a)(1)(A).

52.     Green Sky's conduct has caused, and continues to cause, irreparable injury to the value and goodwill of Georgia-Pacific's trademarks, as well as irreparable injury to its business, goodwill, and reputation.  Georgia-Pacific thus has no adequate remedy at law.

53.     Georgia-Pacific is entitled to temporary, preliminary, and permanent injunctive relief and an award of Green Sky's profits, actual damages, treble damages, attorney fees, costs, and interest.

## THIRD CLAIM FOR RELIEF

### (Missouri State Trademark Infringement – MO. REV. STAT. § 417.056)

54.     Georgia-Pacific incorporates by reference the allegations in the prior paragraphs as if set forth here.  This claim is a substantial and related claim to Georgia-Pacific's federal

claims.

55.      Green Sky has used reproductions, copies or colorable imitations of Georgia-Pacific's trademarks in connection with the sale, offering for sale and advertising of Green Sky's products.  Green Sky's actions have not been authorized by Georgia-Pacific and are likely to cause confusion or mistake as to the source or origin of Green Sky's products.

56.      Green Sky's actions demonstrate an intentional, willful and malicious intent to trade upon the goodwill associated with the Georgia-Pacific Marks.

57.      Georgia-Pacific is being and will continue to be damaged by Green Sky's false designations and representations because they are resulting in and, unless enjoined by this Court, will continue to result in confusion among the purchasing public and the trade as to the true affiliation, connection, association, origin, sponsorship or approval of Green Sky's goods.

58.      Because of Green Sky's false designations and representations, Georgia-Pacific has suffered and will suffer damage to its business reputation, and goodwill, and the loss of sales and profits that Georgia-Pacific would have made but for Green Sky's acts.

59.      Green Sky's actions are in violation of Mo. Rev. Stat. § 417.056, and Georgia-Pacific has no adequate remedy at law.

60.      Because of Green Sky's infringing activities, Georgia-Pacific is entitled to injunctive relief, an accounting for profits and damages pursuant to Mo. Rev. Stat. §§ 417.056, 417.061, and other applicable law.

## FOURTH CLAIM FOR RELIEF

### (State Common Law Trademark Infringement and Unfair Competition)

61.      Georgia-Pacific repeats and incorporates the allegations set forth in all preceding paragraphs as if set forth in full herein.  This claim is a substantial and related claim to Georgia-

Pacific's federal claims.

62.     Green Sky's acts constitute common law trademark infringement and unfair competition in violation of the common law of the State of Missouri.

63.     Green Sky's acts have created, and unless restrained by this Court, will continue to create a likelihood of confusion and deception of the consuming public, causing irreparable injury to Georgia-Pacific for which Georgia-Pacific has no adequate remedy at law.

64.     On information and belief, Green Sky acted with full knowledge of Georgia-Pacific's use of, and statutory and common law rights to, Georgia-Pacific's trademarks and without regard to the likelihood of confusion and deception of the public created by those activities.

65.     Green Sky's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Georgia-Pacific's trademarks to the great and irreparable injury of Georgia-Pacific.

66.     As a result of Green Sky's acts, Georgia-Pacific has been injured in an amount of damages to be proven at trial.  Georgia-Pacific is further entitled to injunctive relief, an accounting of Green Sky's profits, actual damages and punitive damages.

## FIFTH CLAIM FOR RELIEF

### (Tortious Interference with Contract and Economic Relations)

67.     Georgia-Pacific incorporates by reference the allegations in the prior paragraphs as if set forth here.  This claim is a substantial and related claim to Georgia-Pacific's federal claims.

68.     Georgia-Pacific is a party to valid contracts and business relationships under which Distributors lease Dispensers and are (a) required to distribute enMotion® towels for use in Dispensers, and (b) required to ensure that End-User Customers use only Georgia-Pacific's

high-quality paper in the Dispensers.  Georgia-Pacific also is an express and intended third-party beneficiary to valid contracts under which End-User Customers are required to use only enMotion® towels in Dispensers.

69.     Green Sky is not a party to, or third-party beneficiary of, Georgia-Pacific's valid contracts and business relationships with Distributors and End-User Customers; rather it is an unrelated third party.

70.     Green Sky is aware of Georgia-Pacific's ownership rights to the Dispensers and its contracts and business relationships with its Distributors and Distributors' Subleases with End-User Customers.

71.     Green Sky's marketing, selling, and distributing of the Dispensers, enMotion® towels, and non-enMotion® towels for use in enMotion® Dispensers has interfered with Georgia-Pacific's existing and/or potential contracts, business relationships, and economic relations with its Distributors and End-User Customers and will continue to do so.

72.     Despite this knowledge, and without justification, Green Sky has intentionally caused Distributors and/or End-User Customers to breach their contracts and terminate their business relationships with Georgia-Pacific by purchasing Dispensers for resale.

73.     Despite this knowledge, and without justification, Green Sky has encouraged and caused other, non-authorized distributors and end-user customers to purchase Dispensers, in violation of Georgia-Pacific's contracts and business relationships with each of its Distributors and their respective agreements with End-User Customers.

74.     In addition, Green Sky has encouraged and caused other, non-authorized distributors and end-user customers to purchase enMotion® towels in violation of Georgia-Pacific's rights and obligations to its Distributors and their respective agreements with End-User

Customers.

75.      In addition, Green Sky has encouraged and caused other, non-authorized distributors and end-user customers to use non-enMotion® towels in enMotion® Dispensers in violation of Georgia-Pacific's rights and obligations to its Distributors and their respective agreements with End-User Customers.

76.      Green Sky's marketing, selling, and distributing of the Dispensers, enMotion® towels, and non-enMotion® towels for use in enMotion® Dispensers improperly interferes with Georgia-Pacific's existing contracts, business relationships, and/or potential economic relations with its Distributors and End-User Customers.

77.      Green Sky's marketing, selling, and distributing of the Dispensers, enMotion® towels, and non-enMotion® towels for use in enMotion® Dispensers was done for the improper purpose of interfering with Georgia-Pacific's existing contracts, business relationships, and/or potential economic relations with its Distributors and End-User Customers.

78.      As a direct consequence of Green Sky's intentional interference with Georgia-Pacific's existing contracts, business relationships, and/or potential economic relations with its Distributors and End-User Customers, Georgia-Pacific has been injured in an amount of damages to be proven at trial.

79.      These acts of interference were, are, and continue to be intentional and willful.

## SIXTH CLAIM FOR RELIEF

### (Conversion)

80.      Georgia-Pacific incorporates by reference the allegations in the prior paragraphs as if set forth here.  This claim is a substantial and related claim to Georgia-Pacific's federal claims.

81.      Georgia-Pacific was lawfully entitled to possession of its property, as described in

further detail above.

82.     Green Sky exercised unlawful control of Georgia-Pacific's property.

83.     Green Sky deprived Georgia-Pacific of possession of Georgia-Pacific's property.

84.     Green Sky further used and/or appropriated Georgia-Pacific's property indicating a claim or right in opposition to Georgia-Pacific.

85.     Green Sky thereby wrongfully and unlawfully converted Georgia-Pacific's property to Green Sky's own use and benefit.

86.     As a result of Green Sky's activities, Georgia-Pacific has been damaged.

## SEVENTH CLAIM FOR RELIEF

### (Unjust Enrichment)

87.     Georgia-Pacific incorporates by reference the allegations in the prior paragraphs as if set forth here. This claim is a substantial and related claim to Georgia-Pacific's federal claims.

88.     As a result of the foregoing, Green Sky has been unjustly enriched and benefited at Georgia-Pacific's expense.

89.     Green Sky's enrichment is unjust, and equity and good conscience require restitution to Georgia-Pacific.

90.     To the extent this claim is considered purely equitable, Georgia-Pacific has no adequate remedy at law.

## EIGHTH CLAIM FOR RELIEF

### (Conspiracy – Against DOE Defendants)

91.     Georgia-Pacific incorporates by reference the allegations in the prior paragraphs as if set forth here.  This claim is a substantial and related claim to Georgia-Pacific's federal claims.

92.     The DOE defendants include individuals and/or entities who provided the

Dispensers and enMotion® towels to Green Sky for resale without Georgia-Pacific's authorization, and who with an unlawful objective, after a meeting of the minds, conspired and agreed with Green Sky, and each other, to assist and, in fact, did intentionally assist and participate in Green Sky's marketing, selling, and distributing the Dispensers (and the enMotion® towels used in them) in violation of Georgia-Pacific's contractual relationships with its Distributors and End-User Customers and resulting in damage to Georgia-Pacific.

93.     The foregoing Claims for Relief constitute the objects of the conspiracy.

94.     By so conspiring, the DOE defendants are liable for the actions of each other, as well as for the actions of Green Sky, including but not limited to, the acts described in each and every one of the foregoing Claims for Relief.

## JURY TRIAL DEMANDED

Plaintiffs demand a jury trial in this matter pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## REQUEST FOR RELIEF

FOR THESE REASONS, Plaintiffs pray for a judgment in their favor and against Defendants as follows:

1.     For a temporary, preliminary, and permanent injunction against Defendants, their agents, servants, employees, privies, representatives, successors, assigns, attorneys, and all other persons in active concert or participation with them enjoining and restraining them from:

      a.     Marketing, advertising, distributing, or selling Dispensers;

      b.     Marketing, advertising, distributing, or selling enMotion® towels;

      c.     Using Georgia-Pacific's trademarks and logos in connection with the unauthorized sale of enMotion® towels; and

      d.     Performing any other acts that are likely to lead the public to believe that

products used, provided or sold by Green Sky are in any manner licensed, sponsored, approved or authorized by Georgia-Pacific.

2.      For an Order that Green Sky identify its source(s) for the Dispensers and the enMotion® towels and the names of all individuals and entities involved in providing it with Dispensers and enMotion® towels for resale to others.

3.      For an Order that Green Sky identify each person or entity to whom they sold a Dispenser and an accounting of the quantity of Dispensers sold and the price charged to each person or entity.

4.      For all damages Georgia-Pacific has suffered by reason of Defendants' unlawful activities.

5.      For all profits wrongfully derived by Defendants through their unlawful activities.

6.      For three times Defendants' profits or Georgia-Pacific's damages, whichever is greater, arising from Defendants' unlawful activities pursuant to 15 U.S.C. § 1117 and other applicable law.

7.      For punitive damages to the fullest extent permitted by law and equity, and as required in the interests of justice.

8.      For prejudgment and post-judgment interest, pursuant to 15 U.S.C. § 1117 and other applicable law.

9.      For a determination that this case be deemed to be an "exceptional" case and/or that Defendants acted in "bad faith" and awarding costs of suit and reasonable attorney fees and disbursements, pursuant to 15 U.S.C. § 1117 and other applicable law.

10.     For such other and further relief as this Court deems just and equitable.

Date:   May 3, 2010


**HUSCH BLACKWELL SANDERS**


By:  /s/ Timothy J. McFarlin
Gary A. Pierson, II # 511498
Timothy J. McFarlin # 533249
190 Carondelet Plaza, 6th Floor
St. Louis, Missouri 63105
Telephone:  (314) 480-1500
Facsimile:  (314) 480-1505
E-mail:  gary.pierson@huschblackwell.com
          tim.mcfarlin@huschblackwell.com

*Attorneys for Plaintiffs Georgia-Pacific*
*Consumer Products LP and Georgia-Pacific LLC*

18